No. 24-1095

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

RODNEY D. PIERCE and MOSES MATTHEWS,

*Plaintiffs-Appellants*,

v.

THE NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections, JEFF CARMON III in his official capacity as Secretary of the North Carolina State Board of Elections, STACY "FOUR" EGGERS IV in his official capacity as a member of the North Carolina State Board of Elections, KEVIN N. LEWIS in his official capacity as a member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN in her official capacity as a member of the North Carolina State Board of Elections, PHILIP E. BERGER in his official capacity as President Pro Tem of the North Carolina Senate, and TIMOTHY K. MOORE in his official capacity as Speaker of the North Carolina House of Representatives,

*Defendants-Appellees*.

From the United States District Court for
the Eastern District of North Carolina
The Honorable James E. Dever III (No. 4:23-cv-193-D-RN)

**PLAINTIFFS-APPELLANTS' EMERGENCY MOTION TO
EXPEDITE BRIEFING AND DECISION, AND TO SHORTEN
DEFENDANTS-APPELLEES' TIME TO RESPOND TO THIS MOTION**

Edwin M. Speas, Jr.
POYNER SPRUILL LLP
P.O. Box 1801
Raleigh, NC 27602-1801
(919) 783-6400
espeas@poynerspruill.com

*Counsel for Plaintiffs-Appellants*

R. Stanton Jones
Elisabeth S. Theodore
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-6000
stanton.jones@arnoldporter.com

## LOCAL RULE 27(a) STATEMENT

Pursuant to Local Rule 27(a), counsel for Defendants-Appellees have been informed of Plaintiffs-Appellants' intent to seek the relief requested in this motion. Counsel for the Legislative Defendant Appellees advised that they do not consent to the motion and intend to file a response. Counsel for the State Board Defendant Appellees state that they take no position on the motion.

Plaintiffs-Appellants Rodney Pierce and Moses Mathews respectfully request that the Court expedite briefing and decision in this appeal, and that the Court shorten Defendants-Appellees' time to respond to this motion, stating as follows:

1. This action challenges two districts in North Carolina's 2023 enacted Senate map on the ground that they dilute Black voting power in violation of Section 2 of the Voting Rights Act. Plaintiffs filed the suit on November 20, 2023 and filed an Amended Complaint and a motion for preliminary injunction on November 22.

2. The VRA violation in this case is egregious and entirely clear-cut. The 2023 Senate map surgically cracks northeastern North Carolina's Black Belt counties right down the middle, between Senate Districts 1 and 2, ensuring that Black voters will not be able to elect their candidates of choice in either district:



3. Legislative Defendants waited until the eleventh hour to enact the 2023 Senate map in an effort to prevent relief for the 2024 elections and hold one election using districts in northeastern North Carolina that patently violate federal law.

4. The challenged districts violate the VRA, and obviously so. It is easy to draw a reasonably configured majority-Black district satisfying *Gingles* One, and Plaintiffs offered two such districts; Legislative Defendants do not dispute that *Gingles* Two is satisfied; and Legislative Defendants' own expert's analysis confirms that white voters usually vote as a bloc in the relevant region to defeat Black-preferred candidates, satisfying *Gingles* Three. *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). The remedy here is also simple and would change only the boundary between Districts 1 and 2, leaving wholly untouched the 48 other districts.

5. On December 29, 2023, Plaintiffs filed an interlocutory appeal asserting that, in light of impending election deadlines, the district court's failure to decide the preliminary injunction motion constituted a constructive denial permitting appeal under this Court's precedent. On January 9, 2024, a motions panel of this Court dismissed the appeal for lack of appellate jurisdiction but noted the "the time-sensitive nature of the VRA suit[]." Order, *Pierce v. N.C. Board of Elections*, No. 23-2317 (4th Cir. Jan. 9, 2024).

6. On January 26, 2024, the district court denied a preliminary injunction. The court assumed that *Gingles* One is satisfied, and found that *Gingles* Two is

2

satisfied. The district court concluded, however, that *Gingles* Three was not satisfied. The *Gingles* Three test asks whether white voters usually vote as a bloc to defeat Black-preferred candidates in the challenged districts. "The key inquiry … is whether racial bloc voting is operating at such a level that it would actually minimize or cancel minority voters' ability to elect representatives of their choice, if no remedial district were drawn." *Covington v. North Carolina*, 316 F.R.D. 117, 168 (M.D.N.C. 2016), *aff'd*, 581 U.S. 1015 (2017) (cleaned up). In other words, is there "racial bloc voting that, absent some remedy, would enable the majority usually to defeat the minority group's candidate of choice" in the challenged districts. *Id.* at 167. If so, then the racial polarization is "legally significant." *Id.* at 170. This factor is obviously satisfied here. Anyone with passing familiarity with North Carolina's political geography can see that Black-preferred candidates will not and cannot win in either of the challenged districts due to white bloc voting against them. Consistent with this obvious reality, Plaintiffs presented expert evidence that "the candidates preferred by white voters in the areas [at issue] regularly defeat the candidates preferred by Black voters," *Allen v. Milligan*, 599 U.S. 1, 22 (2023) (internal quotation marks omitted), and Legislative Defendants' own expert reported that his findings were "substantively similar." ECF 39-7 at 6. But the district court, in an unprecedented holding, held that *Gingles* Three cannot be satisfied absent "a district-specific evaluation used to determine the minority voting-age population level at

3

which a district becomes effective in providing a realistic opportunity for ... voters of that minority group to elect candidates of their choice." Order at 40 (quoting *Covington*, 316 F.R.D. at 168 n.46). Neither *Covington* nor any other case ever supports the view that, to satisfy *Gingles* Three, VRA Section 2 plaintiffs must prove the precise BVAP percentage at which a district that is *not* effective would *become* effective; such a holding on its face contravenes *Allen v. Milligan* and *Gingles*.

7. The district court also held, among other things, that even if all three *Gingles* preconditions were established, a redistricting plan cannot violate VRA Section 2 unless the legislature was presented with evidence during the mapmaking process that Section 2 was violated. Order at 6-11. That too is plain legal error. A legislature can cite mapdrawing-stage evidence of a Section 2 concern in *defending* against charges of racial gerrymandering; that does not mean a legislature that *fails to conduct* a Section 2 analysis is immune from Section 2 liability. The district court's finding that the totality of the circumstances does not support a Section 2 violation here is also plainly erroneous. "It will be only the very unusual case in which the plaintiffs can establish the existence of the three *Gingles* factors but still have failed to establish a violation of § 2 under the totality of circumstances." *Harris v. McCrory*, 159 F. Supp. 3d 600, 623 (M.D.N.C. 2016). This is not an unusual case. The district court's contrary conclusion rests on many errors, including a suggestion that "socioeconomic disparities" between Black and white North Carolinians do not

4

result from "race discrimination by North Carolina." Order at 48.

8. There is still time to correct this egregious VRA violation and avoid irreparable harm to over 100,000 Black voters in northeastern North Carolina. There is presently no primary election in either SD1 or SD2 because no more than one candidate from each party filed to run in the those districts. If a primary election is needed in replacement versions of these two districts, the State Board has confirmed in a filing below that it is administratively feasible to hold such primary elections on May 14, the date already scheduled for runoff primaries. ECF 41 at 5.

9. Plaintiffs thus respectfully request that this Court expedite this appeal to enable a decision in time for the adoption of new districts for May 14 primaries.

10. Based on the State Board's submission below, if the challenged districts are invalidated, primary elections in two new districts can be held on May 14 as long as candidate filing is complete before March 15. *Pierce*, ECF 41 at 5. Adopting districts by March 6 would allow a week of candidate filing from March 7 to 14.

11. Plaintiffs suggest that a liability decision from this Court by February 15 will allow sufficient time for remedial proceedings, including (a) giving the General Assembly a week to enact two remedial districts, (b) allowing the parties to brief objections to any such enacted remedial districts, and (c) allowing the district court and potentially this Court to resolve those objections.

12. To facilitate a decision on the merits of this appeal by February 15,

5

Plaintiffs respectfully request the following briefing schedule:

- Plaintiffs' opening brief due January 31
- Defendants' responses due February 5
- Plaintiffs' reply due February 7
- Oral argument, if the Court wishes, on February 9 or the week of February 12

13. If the Court issues a decision finding a VRA violation by February 15, it could give the General Assembly until February 22 to enact two remedial districts. The parties could then submit objections or proposed alternative remedial districts by February 26, and the Court could direct the district court to adopt remedial districts by February 28, which would allow either side to appeal and this Court to enter a final decision adopting remedial districts by March 6. Candidate filing could then be held from March 7 through 14, enabling primary elections on May 14.

14. This expedited schedule is reasonable in light of the stakes: whether Black voters in northeast North Carolina's Black Belt counties will have an opportunity to vote in lawful districts in 2024. Over 100,000 Black voters will face irreparable harm if they are forced to vote in the challenged districts in even one election. Legislative Defendants should not be rewarded for their intentional decision to wait until the eleventh hour to enact a map that obviously violates federal law based on the cynical expectation that their own delay would enable them to

6

thwart judicial relief in time for the 2024 elections.

15. Plaintiffs also request that the Court shorten the time for Defendants to respond to this motion to expedite, to enable a decision on the motion before January 31.

16. *Purcell* does not bar relief for the 2024 elections. As noted, there are no primaries in the two challenged districts, and even if remedial districts are adopted, it is possible that the first election in those districts will be the general election in November—over *nine months* from now. Even if primaries are needed in one or both remedial districts, a May 14 primary is still three-and-a-half months away, and the State Board has confirmed that it is administratively feasible to hold May 14 primaries in two remedial districts if candidate filing ends before March 15. In these circumstances, *Purcell* simply does not apply. In any event, the merits in this case are so clear that *Purcell* would not bar relief even if an election were closer. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (Even where *Purcell* applies, it "might be overcome even with respect to an injunction issued close to an election if a plaintiff establishes at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.").

7

## CONCLUSION

For the foregoing reasons, the Court should expedite this appeal and order Plaintiffs to file their opening brief by January 31 (or earlier, if the Court prefers), Defendants to file their responsive brief by February 5, and Plaintiffs to reply by February 7. If the Court chooses to hold oral argument, Plaintiffs request that it do so February 9 or the week of February 12 and issue a liability ruling by February 15. Plaintiffs also request that the Court shorten Defendants' time to respond to this motion.

Dated:  January 26, 2024

Edwin M. Speas, Jr.
POYNER SPRUILL LLP
P.O. Box 1801
Raleigh, NC 27602-1801
(919) 783-6400
espeas@poynerspruill.com

Respectfully submitted,

*/s/ R. Stanton Jones*
R. Stanton Jones
Elisabeth S. Theodore
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-6000
stanton.jones@arnoldporter.com

*Counsel for Plaintiff-Appellants*

8

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g)(1) because it contains 1,741 words.

2. This motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: January 26, 2024

/s/ R. Stanton Jones
R. Stanton Jones
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
(202) 942-6000
stanton.jones@arnoldporter.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 26, 2024, the foregoing was electronically filed with the Court via the appellate CM/ECF system, and that copies were served on counsel of record by operation of the CM/ECF system on the same date.

*/s/ R. Stanton Jones*
R. Stanton Jones

10